ODOM, Justice.
 

 On May 5, 1942, F. E. Didier, probation officer, made and filed an affidavit in the Juvenile Court of Avoyelles Parish, charging that the defendant, Albert Scallan, on or about May 2, 1942, did “contribute to the delinquency of his minor daughter [we omit the name], who is under the age of 17 years, by encouraging and permitting her to enter the Black Cat Night Club, where her morals may be corrupted, endangered or depraved, or may likely be impaired, in violation of the law of this state, the orders of the 12th Judicial District Court and the orders of affiant, a duly constituted Probation officer of this parish”.
 

 On May 18, following, the district attorney filed a bill of information against defendant, making a charge identical with that set out by the probation officer in his affidavit made May 5.
 

 These charges were brought under Act No. 139 of 1916, page 328, which makes it a misdemeanor for parents, guardians, and others, having the control or custody of a child or children under 17 years of age, to abuse, mistreat, or ntglect such child or children, to permit such child or children to associate with vicious, immoral, or criminal persons or to grow up in idleness, or to permit such child or children “ * * * to enter any place where the morals of such child may be corrupted, endangered or depraved, or may likely be impaired.”
 

 It will be noted that the charge made against the defendant in this case follows the language of the statute, which makes it a misdemeanor for a parent having the custody of a child or children to permit such child or children “to enter any place where the morals of such child may be corrupted, endangered or depraved, or may likely be impaired”.
 

 The defendant was brought to trial, as shown by the minutes of the Juvenile Court, on May 18, 1942. Before proceeding to trial, the accused through his counsel filed a motion to quash the affidavit, which motion was argued and submitted and overruled by the court, to which ruling of the court counsel for the accused objected and reserved a bill of exception. Thereupon, the accused waived arraignment and pleaded not guilty. He was tried and found guilty. On May 26, 1942, defendant was sentenced by the court to pay a fine of $25 and costs and to serve a period of 60 days in the parish jail.
 

 The minutes of the court recite that then and there “the suspended sentence which had been imposed upon him on February 24, 1942 under Juvenile Division Court No. 80 was recalled and the sentence therein imposed, namely three (3) months jail and $25 fine and costs was declared executory immediately and in default of the payment of the fines, to serve an additional period of 30 days in the Parish Jail”.
 

 The suspended sentence referred to in the above extracts from the minutes of
 
 *1031
 
 the Juvenile Court of May 26, 1942, was imposed upon defendant in the Juvenile Court after he had entered a plea of guilty to a like charge filed by the probation officer of Avoyelles Parish on January 2, 1942. The defendant was brought to trial on the former charge on February 24, 1942, and the minutes of the court, of that date show that the accused through counsel filed .a motion to quash the affidavit after the district attorney had filed a bill of particulars requested by the defendant. The motion to quash was overruled by the court. Thereupon, according to the minutes of the Juvenile Court, “The accused then through his counsel in open Court, waived arraignment and pleaded guilty to the above charge and was sentenced to serve a period of three (3) months in the Parish Jail and to pay a fine of $25 and costs which sentences were ordered by the Court suspended, during good behavior.”
 

 On May 26, 1942, after the Juvenile Court had pronounced the defendant guilty of the charge brought against him on May 2 and had sentenced him for that offense, and after the court recalled the suspended sentence which had been imposed upon him on February 24, 1942, the court ordered the defendant incarcerated immediately.
 

 Thereupon, counsel for the defendant gave notice in open court that he would apply to this court for a writ of certiorari commanding the judge of the Juvenile Court to send up the records in both cases to the end that the rulings of the court might be reviewed and their validity ascertained, and for a writ of prohibition prohibiting the juvenile judge from proceeding to carry out t,he sentences imposed upon the defendant “until the further orders of this Honorable Court”.
 

 . Counsel for defendant filed application for the writs in this court on June 5, 1942, and the writs were granted on the same day wij:h stay order. The case is now before this court for review.
 

 The record sent up to this court shows that two charges of juvenile delinquency were filed against the minor child of the defendant, one on January 2 and one on May 5, 1942, and that she was not convicted. The district attorney requested that the cases against her be set aside or dismissed. The judge allowed the dismissal of these cases and stated that “her conduct has been such that nothing but good can be said of her, that she is well behaved, is a regular student of the Marksville High School, where she is doing good work, and attends to her religious duties regularly, for all of which she is to be praised and complimented”.
 

 Counsel for relator argues that the defendant could not be legally convicted because his minor daughter, under 17 years of age, had not been convicted and was not in fact a delinquent child.
 

 There is no merit in this contention. Act No. 139 of 1916 was adopted “For the protection of children under seventeen years of age”, and sets out in detail “the facts and causes” which constitute misdemeanors on the part of parents relating to the care, treatment, and control of their minor children. Specifically, the act declared .that it shall be a misdemeanor for
 
 *1033
 
 a parent having custody of a child under 17 years of age to permit such child “to enter any place where the morals of such child may be corrupted, endangered or depraved, or may likely be impaired”.
 

 The complaint made against the defendant was that he encouraged and permitted his minor child to enter a night club where her morals might be corrupted, endangered, or might likely be impaired. The charge is in the language of the statute. Under the plain terms of the act, parents having control or custody of minor children under 17 years of age are prohibited from permitting them to enter any place where their morals may be corrupted or may be endangered or may be impaired. Therefore, under the act, parents may be guilty of a misdemeanor for permitting their minor child or children to do certain things, even though, by the doing of those things, the child or children may not have become delinquent in fact.
 

 The act declares that a parent who “knowingly or wilfully is responsible for, encourages, aids, causes or connives at, or who knowingly or wilfully does any act or acts to produce, promote, or contribute to the conditions which cause such child to be adjudged guilty of juvenile delinquency” is guilty of a misdemeanor; so that, if the child becomes a delinquent or is “adjudged guilty of juvenile delinquency”, the parent is guilty of a misdemeanor if he encouraged, aided, consented to, or connived at, such acts or conduct of the child as may have caused her to become a delinquent. Or, if he commits any act or acts to produce, promote, or contribute to the conditions which cause such child to be so adjudged, he is guilty under the act.
 

 In this case defendant’s child was not adjudged guilty of juvenile delinquency, nor was she in fact a delinquent child. Hence counsel’s argument that defendant was illegally convicted. There is no merit in this argument because, under the act, not only are parents prohibited from doing those things which cause their children to become delinquent, but they shall not permit their children to do those things which may cause them to become law violators, immoral, or corrupt. They must look after and protect their minor children to the end that their morals may not be corrupted, endangered, or impaired.
 

 The act imposes upon parents the duty of exercising diligence in the treatment and control of their children in order to prevent them from becoming delinquent. It provides, among other things, that a parent having custody or control of a child under the age of 17 years, “who abuses such child, or mistreats or neglects such child,
 
 or who omits - to exercise rearsonable diligence in the control of such child to prevent such child from becoming guilty of delinquency,
 
 * * * or to prevent such child from becoming adjudged by a juvenile court, or other court, as in need of the care and protection of the State”, shall be guilty of a misdemeanor. (Italics are the writer’s.)
 

 Clearly, therefore, the act not only penalizes parents for actively contributing to the delinquency of their minor children, but penalizes them also for their failure to exercise reasonable diligence in the con
 
 *1035
 
 trol of them in order to' prevent them from becoming delinquent.
 

 The purpose of Act No. 139 of
 
 1916,
 
 according to its title, is to protect children under 17 years of age, and to that end it is declared to be a misdemeanor for parents, guardians, and others, having control or custody of children under 17 years, of ag'e, “to contribute to the neglect, dependency or delinquency of such children”. But the title goes further and defines and sets forth “the facts and causes which constitute misdemeanors on the part of parents, guardians, and others, and providing a penalty therefor”.
 

 The body of the act is in conformity with the title. It makes it a misdemeanor for parents, guardians, and others, not only to contribute to the delinquency of their child or children or to the conditions which cause them to be adjudged guilty of juvenile delinquency, but also “to do any of the acts hereinbefore enumerated”. One of the acts “hereinabove enumerated” is for a parent to “permit such child * * * to enter any place where the morals of such child may be corrupted, endangered or depraved, or may likely be impaired”.
 

 The record clearly shows that the issue involved at the trial was not whether the defendant had contributed to the delinquency of his child, but whether the Black Cat Night Club, where he encouraged and permitted her to go, was a place where her morals might be corrupted, endangered, or impaired.
 

 We find no merit in defendant’s motion to quash the affidavit of the probation officer and the bill of information filed by the district attorney. . The motion to quash is grounded upon the allegation that the affidavit and the bill do “no,t sufficiently inform this defendant as to the nature, law and facts of said charge to enable him to properly defend himself”, and that they set forth “no specific crime” and are not “specifically informative of any offense denounced by the statutes and laws of the State of Louisiana”.
 

 The charge made in the affidavit and the bill follows the language Qf the statute, specifically naming the place which the child was encouraged by the father to enter, and the place she did enter. If, as counsel for defendant now argues, the affidavit and the bill were not sufficient to inform defendant as to the nature, law, and facts of said charge, it was his privilege to request the judge to order the district attorney to file a bill of particulars. No such request was made.
 

 When defendant was brought to trial in February, 1942, for a like offense, his counsel filed a motion for a bill of particulars, which was granted, and the district attorney then specifically set forth the law under which the charge was brought, as well as the facts and circumstances on which he would rely. Counsel for the defendant in that case stated to the court that the information furnished by the district attorney was not sufficient. However, the objection by counsel in that case need not now be considered, for the reason that the defendant, when arraigned, entered a plea of guilty.
 

 Another point raised by counsel for the defendant in his application for writs
 
 *1037
 
 is that the district judge had no right to recall and declare executory the sentence imposed upon defendant when he was convicted in February, 1942, which sentence was suspended by the court during good behavior. There is no merit in this contention. Article 536 of the Code of Criminal Procedure provides that, where there is a conviction of a misdemeanor in any court of this state, the judge may suspend sentence, and Article 537 provides that, when the judge suspends sentence, as provided for in Article 536, “the entire proceedings relative thereto shall be the same as set out in previous articles of this title relating to suspended sentences”. The proceedings referred to, as set out in previous articles, are found in Article 533 of the Code, which reads as follows: “Upon the final conviction of the defendant of any other felony, pending the suspension of sentence, the court granting such suspension shall cause the arrest of the defendant if he is not then in the custody of the court, and during a term of the court shall pronounce sentence upon the original judgment of conviction, and shall cumulate the punishment of the first with the punishment of any subsequent conviction or convictions, and in such case no new trial shall be granted in the first conviction.”
 

 The judge in the present case did precisely what he was authorized to do by Article 533 of the Code. When defendant was sentenced after his conviction in May, 1942, the judge pronounced sentence upon the original judgment of conviction and cumulated the punishment of the first with the punishment of the second conviction.
 

 Counsel for defendant objected'to this proceeding on the ground “That the order was premature in view of the fact that the judgment of subsequent conviction was not final and that the proceeding was not legal and proper”. The judgment of conviction in the second case was final, in so far as the Juvenile Court was concerned, at the time the judge recalled and rendered executory the sentence in the first case.
 

 Counsel for relator says in his application for the writs that the Black Cat Night Club, which defendant’s minor daughter was permitted by her father to enter, was a licensed place which was attended by a great many men, women, and children of the community and was not a place where the child’s morals “may be corrupted, endangered or depraved, or may likely be impaired”.
 

 The fact that the place was licensed and that other men, women, and children visited it bears no relevancy to the question as to whether it was .a place where the morals of a 13-year-old girl might be corrupted or where her morals were likely to be impaired. The testimony relating to the character of the place and the conduct of those who visited it is not in the record. We must assume, however, that the evidence adduced.at the trial supported the conclusion of the judge that it was a place which a girl 13 years of age should not enter. Commenting upon the character of the place, the judge said in his return or answer to the rule: “Further, that while the night club may have been licensed, respondent as Judge, received officially many complaints on the immorality prevailing at
 
 *1039
 
 said club, and personally knew that same constituted a public nuisance because of the drunkenness, fights, disturbances of the peace, and prostitution that went on there * * *. Respondent’s only wish is that the Appellate Court could have the benefit of the testimony and the evidence which it heard during the trial of these cases.”
 

 Counsel for relator filed a motion in arrest of judgment, which was overruled by the judge. We find no merit in counsel’s argument that the judge erred in this respect. “A motion in arrest of judgment lies only for a substantial defect, patent upon the face of the record.” (Code of Criminal Procedure, Article 517.) Counsel has not pointed out any defect patent on the face of the record, and we have found none.
 

 When the case was called for trial on May 18, counsel for relator “submitted a special charge to the Court as to what constitutes contributing to delinquency”. After reading it, the court refused to give this special charge, and counsel argues that the ruling of the judge was erroneous.
 

 We do not think the judge erred.' The substance of the special charge requested was this: That, if a parent owns considerable property and a comfortable home, equipped with all modern conveniences, and provides all the necessities of life for the support of his family in food, clothing, etc., and if the child is regularly sent to school and does good work there and attends to her religious duties and is not being reared in idleness, and if said child has not committed any act or acts constituting juvenile delinquency, the mere fact that the father permitted the child to visit “a regularly licensed amusement club where intoxicating liquors are sold, which is visited and patronized by the people of the community”, does not constitute “contributing to delinquency”.
 

 As we have already stated, the testimony relating to the character of the place and the conduct of those who attend the Black Cat Night Club is not in the record. But the statements made by the trial judge in his return or answer to the rule indicate that the testimony disclosed that it was a place where there were fights, drunkenness, and general debauchery. Regardless of the fact that a father may provide all the physical necessities of life for his children, he may yet fail to exercise reasonable diligence in the control of them to prevent them from becoming delinquent, or may wilfully and knowingly permit them to commit acts which may corrupt or endanger their morals.
 

 After a careful consideration of the record sent up in this case, our conclusion is that there is no occasion for us to interfere with the rulings of the trial judge.
 

 For the reasons assigned, the writs heretofore issued are recalled, and the verdict and sentence are affirmed; relator to pay all costs.
 

 ROGERS, J., absent.